JUAN A. SANTIAGO d/b/a JOSÉ SANTIAGO E HIJO, SUCR., Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, JOSÉ M. CALDERÓN, JR., JUDGE, Respondent; CÁMARA DE COMERCIANTES MAYORISTAS, Intervener.

No. C-65-82.          Decided April 4, 1966.

---

444

*Carmelo Ávila Medina* and *Roberto Ávila Rivera* for petitioner. *Rodríguez Ema & Rodríguez Ramón, Rodolfo Sequeira,* and *Nicolás Jiménez* for intervener.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

On April 27, 1964, Corporación Puertorriqueña de Servicios de Alimentos issued a promissory note to the order of Juan A. Santiago for $5,000 and as guarantee it executed a mortgage on cafeteria equipment consisting of 17 pieces, the chattel mortgage being recorded on May 20, 1964.

On the following August 18 the Mayagüez Chamber of Commerce filed a complaint against the mortgagor, Corporación Puertorriqueña de Servicios de Alimentos, in the Superior Court, San Juan Part, to collect $4,048.59. To secure the effectiveness of the judgment it obtained attachment of some personal property and of a stock certificate, said property being deposited in two warehouses under the custody of a depositary appointed by the court.

Judgment by default was entered against the defendant corporation. For its execution an order was issued on Janu-

ary 25, 1965. Because the two warehouses where the attached personal property was deposited were rather distant from each other, the court ordered the holding of two auction sales, one in each warehouse. The marshal issued edicts therefor giving notice of the first auction sale of part of the personal property to be held at ten o'clock in the morning on April 20, 1965, in a warehouse located on the old Isla Verde highway, and the second auction on the same day, but at two o'clock in the afternoon, in another warehouse in Puerta de Tierra.

Thus, on March 31, 1965, the mortgagee, Juan A. Santiago, appeared at the suit for the collection of money, filing a motion for intervention in which he set forth that he was the owner of the said mortgage credit and that the mortgaged personal property had been attached in that suit and would be put up at auction sale together with other personal property, without the plaintiff, Cámara de Comerciantes Mayoristas, having deposited upon attachment, the principal cf the credit amounting to $5,000 in conformance with the law. He requested the stay of the auction sales and the nullity of the attachment.

That motion was heard on April 9, 1965. The mortgagee intervener's attorney failed to appear at the hearing, but the plaintiff's attorney did appear and ". . . stated to the court *that he consented to certain facts of the intervention* and that since Mr. Ávila Medina had failed to appear, he would get in touch with him to prepare a stipulation concerning his intervention and submit it to the court for its decision."—Minutes of that date—.

The trial court did not stay the auction sales. They were held on the date and in the places notified, all the personal property sold thereat being adjudicated to the plaintiff, in partial payment of the principal of the judgment.

The mortgagee-intervener's attorney appeared at the second auction and he established the existence of the afore-

said mortgage lien on part of the property to be auctioned. A representative of plaintiff revealed right there—according to the minutes of the second auction—:

". . . that in this case certain equipment was attached; that Mr. Juan A. Santiago, doing business as José S. e Hijos, Sucrs., had a personal property mortgage for similar equipment; that in the claim made by said gentleman today on the mortgaged equipment the serial numbers of said equipment appear duly specified, which numbers do not agree with the ones being sold today. That . . . *he is ready to deliver to Mr. Santiago any equipment adjudicated to the Cámara de Comerciantes Mayoristas this afternoon which appears included in the mortgage deed to which Mr. Santiago refers.*" (Italics ours.)

Six days after the auctions the intervener therein filed a "Motion Requesting Deposit of Money." In it he set forth the holding of the auctions, the adjudication in partial payment of the personal property to plaintiff, that among the chattels adjudicated there was property mortgaged in his favor and that plaintiff had possession and control thereof and he prayed that plaintiff be ordered to deposit the principal of the $5,000 mortgage and $300 of due interest.

Plaintiff objected to that motion "on the ground that it has at no time assumed any personal obligation concerning said payment, the only right of the intervener being to foreclose the chattel mortgage referred to in his motion."

The parties argued the new motion. On June 18, 1965, the trial court entered an order favorable to the mortgagee-intervener, in which, in its pertinent part, it stated and decreed:

"Pursuant to the law and the aforecited case law, the attachment levied by plaintiff on the property in question is void *ab initio. Araujo* v. *Arenas, supra.*

"The plaintiff being aware that the chattels were encumbered with a chattel mortgage in favor of intervener, it requested the sale thereof at public auction, and despite the timely motion for intervention filed by the intervener, it insisted that the property be sold at public auction wherein said chattels

were adjudicated to the plaintiff. The fact that the plaintiff was interested in having the said property adjudicated to it, as in effect it was, being aware of the mortgage encumbering it, and the attachment levied upon it being void, for the reasons stated, the plaintiff is bound to pay to the intervener the value of said property at the time the attachment was levied. *United Porto Rican Bank* v. *González,* 46 P.R.R. 755.

"Therefore, it is optional for the plaintiff to pay to the intervener the value of the property at the time of attachment or the amount claimed by the intervener, consisting of the amount of the chattel mortgage which encumbers said property, plus the interest accrued on said mortgage amounting to $300.

"If plaintiff is interested in paying to the intervener the value of the attached property at the time the attachment was levied, the Court will set a hearing so that evidence be presented in regard to the value of said property.

"Let it be recorded and notified."

The plaintiff moved for the reconsideration of that order stating that the decisions cited by the court in support thereof did not have the scope given to it in said order. It alleged moreover, and prayed, as follows:

"3. Lastly, the plaintiff wishes to state that *it is not interested at all in acquiring the aforesaid personal property and that ever since the intervener filed his motion for intervention, it has been and is ready to deliver to him all the mortgaged chattels which appear in the attachment,* the delivery of which has not been carried out because many of them were not subject to the attachment, and as to others which appear in the attachment, the intervener claims that they be delivered without having been able to establish, to the satisfaction of the plaintiff, that they appear in the chattel mortgage contract.

"WHEREFORE, the plaintiff respectfully requests that the Court reconsider its aforesaid order and decree that the only right to which the intervener is entitled is to foreclose the mortgaged property, and not to require plaintiff to pay its value, and *in due time order the marshal to appear at plaintiff's warehouse, or at the place where said personal property is deposited, and to deliver to the intervener all the chattels which appear in the chattel mortgage contract."* (Italics ours.)

After the motion for reconsideration was argued, the trial court reconsidered its previous order, set it aside and denied the motion for intervention of April 23, 1965. It alleged that the doctrine of the cases *United Porto Rican Bank* and *Araújo* had been set aside by the decision in *Hull Dobbs Co.* v. *Superior Court*, 81 P.R.R. 214 (1959) and that the only right to which the mortgagee was entitled was to foreclose the chattel mortgage or to obtain the ordinary action of debt against the original debtor Corporación Puertorriqueña de Servicios de Alimentos.

At the request of the intervener therein, we issued a writ of certiorari to review the proceedings.

The attorneys for the parties have offered very little help to this Court for the decision of the questions involved in this appeal. Appellant's counsel submitted his case on the basis of the brief memorandum which he attached to his petition for certiorari. But appellee's counsel did less. They merely set forth: ". . . submits this appeal on the grounds which appear in the decision appealed from . . .".

Considering the attendant circumstances concerning the incident of intervention, we believe that the decision challenged, rendered in reconsideration of that of June 18, 1965, is erroneous.

In the first place, the plaintiff, Cámara de Comerciantes Mayoristas, in its petition for reconsideration was not interested in having the motion for intervention denied; it only requested that the decision of June 18 be set aside for the only purpose of decreeing:

". . . that the only right to which intervener is entitled is to foreclose the mortgaged property, and not to require plaintiff to pay its value, and *in due time order the marshal to appear at plaintiff's warehouse, or at the place where said personal property is deposited, and to deliver to the intervener all the chattels which appear in the chattel mortgage contract.*" (Italics ours.)

In the second place, our decision in *Hull Dobbs Co.* v. *Superior Court*, 81 P.R.R. 214 (1959) did not have the effect of overruling entirely the doctrine established in *United Porto Rican Bank* v. *González*, 46 P.R.R. 755 (1934) and *Araújo* v. *Arenas*, 60 P.R.R. 277 (1942).

What we decided in relation to these two cases in *Hull Dobbs Co.* was:

"In view of the foregoing reasons, *and as to the question herein involved,* [whether the mortgagee automatically becomes the owner of the mortgaged personal property or whether the mortgage constitutes a security for the payment of the principal obligation] the cases of *United Porto Rican Bank* v. *González,* 46 P.R.R. 755, and *Araújo* v. *Arenas,* 60 P.R.R. 277, are hereby overruled. . . . we believe that both cases, *as respects the application in Puerto Rico of the title-conveyance theory,* should not subsist." (Italics ours.)

■ The rest of what was decided in those two cases, as well as the nullity of the attachment of the mortgaged personal property without first depositing the amount of the mortgaged obligation, was not affected.

In the third place, the only purpose of the motion for intervention was to obtain the nullity of the attachment on the mortgaged personal property and to avoid their sale at public auction. The position of Cámara de Comerciantes Mayoristas, although it auctioned all the attached property for the reasons it stated, was not in essence hostile, but rather favorable, to the claims of the mortgagee-intervener. It did not attack at any time the validity of the mortgage credit, nor its enforceability, nor did it maintain the validity of the attachment on the personal property actually mortgaged which were identified as such, nor did it want to possess them permanently to the detriment of the mortgagee. At the first hearing it informed the trial court that "it consented to certain facts of the intervention" and that it would get in touch with the mortgagee's counsel "to prepare a stipulation

concerning his intervention and submit it to the court for its decision"; in the second auction it stated that it was ready "to deliver to Mr. Santiago any equipment adjudicated . . . which appears included in the mortgage contract to which Mr. Santiago refers"; and lastly it stated in its motion for reconsideration "that it is not interested at all in acquiring the aforesaid personal property and that ever since the intervener filed his motion for intervention, it has been and is ready to deliver to him all the mortgaged chattels which appear in the attachment" and in it urged the court that "in due time order the marshal to appear at plaintiff's warehouse, or at the place where said personal property is deposited, and to deliver to the intervener all the chattels which appear in the chattel mortgage contract."

Plaintiff objected to being compelled to pay the amount of the mortgage credit on personal property which had not disappeared, had not been concealed, but which was being placed at the disposal of the mortgagee for the purposes of foreclosing its credit.

In that situation, was it fair to reconsider its previous decision in which the attachment was annulled, to the effect of denying the motion for intervention which did not have real opposition?

■ The reconsideration would have been appropriate for the purpose of eliminating all the imposition of the payment of the credit decreed against the plaintiff in the suit, annulling the attachment levied upon the mortgaged personal property and the auction and adjudication of said property to plaintiff, so that in due time the mortgagee may foreclose his credit, ordering, as it was requested by plaintiff, that the marshal, together with the parties, identify the mortgaged personal property and remand it to its true owner, that is, to the mortgagor, Corporación Puertorriqueña de Servicios de Alimentos.

The order appealed from entered in reconsideration on July 22, 1965 will be set aside, and it will be ordered that the case be remanded to the trial court to enter another order consistent with the terms of this opinion.